# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JAMES ZEIGLER,**

        **Plaintiff,**

                                    **Case No. C2-07-0272**

      **v.**                          **JUDGE SMITH**

                                    **Magistrate Judge Abel**

**JEANETTE MISKIEWICZ,** *et al.*,

        **Defendants.**

## OPINION AND ORDER

Plaintiff James Zeigler brings this action against Defendants Jeanette Miskiewicz, the Franklin County Adult Probation Department, S.T.O.P., Inc., Southeast, Inc., and Dorothy Howard.[1] Plaintiff is seeking damages on federal and state law claims. Specifically, Plaintiff asserts claims of violation of his due process, common law conspiracy, violation of free speech, violation of involuntary servitude prohibition, violation of prohibition against cruel and unusual punishment, violation of the Ninth Amendment to the United States Constitution, and state law actions under 28 U.S.C. §1367.

Defendants Dorothy Howard and Southeast, Inc. have filed a Motion for Partial Judgment on the Pleadings on the First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, and ¶58 of the Ninth Claim of Plaintiff's Complaint (Doc. 16). Defendant S.T.O.P., Inc. has filed a Motion for Judgment on the Pleadings and Dismissal of Plaintiff's Complaint (Doc. 17). The responses

---

[1] Plaintiff initially named a John Doe probation officer, however, the Court dismissed the Doe Defendant on October 15, 2007.

and replies have been filed and these motions are now ripe for review.  For the reasons that follow, the Court **GRANTS** Defendant Howard and Southeast, Inc.'s Motion for Partial Judgment on the Pleadings and **GRANTS** Defendant S.T.O.P., Inc.'s Motion for Judgment on the Pleadings.

## I.    FACTS

Plaintiff James Zeigler is a resident of the State of Ohio and a convicted felon in case number 03CR2756 in the Franklin County Court of Common Pleas, Criminal Division. Defendant Jeanette Miskiewicz is a resident of the State of Ohio and was employed as a probation officer with Defendant, the Franklin County Adult Probation Department.  Defendant S.T.O.P., Inc. ("S.T.O.P.") is incorporated under the laws of the State of Ohio and operates in Franklin County, Ohio.  Defendant Southeast, Inc. ("Southeast") is incorporated under the laws of the State of Ohio and operates in Franklin County, Ohio.  Defendant Dorothy Howard is a resident of the State of Ohio and was a therapist with the STEP program at Southeast, a mental health counseling program.

On April 23, 2003, Plaintiff pled guilty to a bill of information charging him with unlawful sexual conduct with a minor in violation of Ohio Revised Code Section 2907.04.  (Case number 03CR2756, Franklin County Court of Common Pleas, Criminal Division, Judge Richard Frye).  Plaintiff was sentenced to two years of community control sanctions and classified as a sexually oriented offender.  The requirements of the community control were: to attend sex offender counseling, obtain employment and/or continue employment, and to refrain from violating any more laws.

Plaintiff indicates that he was abiding by all the terms and had a good relationship with his probation officer when his community control began.  Plaintiff's case was then transferred to Defendant probation officer Jeanette Miskeiwicz.  Defendant Miskeiwicz met with Plaintiff on or about February 2004.  Plaintiff claims that Defendant Miskeiwicz met with his then-employer of seven years sometime in July 2004, and as a result of this meeting, Plaintiff was terminated from his employment.  In March 2005, Defendant Miskeiwicz filed a Request for Revocation of Community Control against Plaintiff because he was unemployed.  As a result, the Franklin County Court of Common Pleas extended Plaintiff's community control period by two years, creating a new release date of April 22, 2006.  The same requirements of community control were imposed with an additional requirement that Plaintiff was ordered to spend the next three months actively participating in the sex offender program at Southeast, unless he completed the program earlier than that time period.

When Plaintiff was originally sentenced to community control supervision in 2003, the probation department required him to attend sex offender counseling for the entire duration of probation.  Plaintiff complied with this requirement by attending weekly counseling sessions at S.T.O.P.  Attendees at S.T.O.P. were required to pay a weekly attendance fee of $50.00, or they would be unable to attend the counseling session.  For required attendees, like Plaintiff, they may also run the risk of a probation violation.  During his attendance at S.T.O.P., Plaintiff gave a fellow attendee a loan of ten dollars so that person could enter the session.  Plaintiff only made this loan after asking for and obtaining approval from the S.T.O.P. employee working at the front counter.

After that session, Plaintiff was approached by another S.T.O.P. employee and advised that he had violated S.T.O.P. rules regarding attendee contact with each other.  Plaintiff claims he attempted to explain that the transaction was approved by another S.T.O.P. employee, but Plaintiff was forced out of the S.T.O.P. program without notice, hearing, or a right to review the decision.

At the time Plaintiff was dismissed from the S.T.O.P. program, he had attended for approximately thirteen months without incident.  As a result of the dismissal from the program, Defendant Miskeiwicz amended her Request for Revocation of Community Control in May 2005, stating that Plaintiff had been unsuccessfully terminated from the sex offender counseling program.  As a result of Plaintiff's removal from the S.T.O.P program, the Adult Probation Department, through Defendant Miskeiwicz, enrolled Plaintiff at Southeast for mental health counseling.

Plaintiff attended the program at Southeast for approximately twenty-two months without incident.  On or about March 15, 2006, Defendant Dorothy Howard, a counselor at Southeast, informed Plaintiff to "get out and don't come back," with no further explanation.  Further, Plaintiff states that he was not informed how to appeal such decision or how such action would affect his community control.

Plaintiff's probation officer Defendant Miskeiwicz then filed another Request for Revocation of Community Control against Plaintiff on March 24, 2006, stating that Plaintiff had been unsuccessfully terminated from counseling.  Plaintiff argues that he attended more sex offender treatment than his original sentence of three months sex offender counseling.  Plaintiff states that his counsel in the Franklin County case filed a motion for release from community

control sanctions.  Despite this motion, Plaintiff was arrested and held in the Franklin County Jail.

Plaintiff states that he was never informed as to his charges or given any notice or opportunity to respond.  Plaintiff further states that while under arrest, he was physically beat and thrown against a wall, which caused physical and mental injuries.  Plaintiff, however, fails to name the person who allegedly beat him and instead names Defendant John Doe.[2]

There are no further facts provided by any of the parties to explain why Plaintiff was arrested and what if anything happened as a result of his arrest.

Plaintiff then filed this case on March 29, 2007.  There are currently two motions for judgment on the pleadings before the Court.

## II.   STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."        It is well settled that a court must review a Rule 12(c) motion under the same standard applicable to a Rule 12(b)(6) motion.  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007) (post-*Bell Atlantic* case stating that Rule 12(b)(6) standard is the same as Rule 12(c) standard).  Thus, under the United States Supreme Court's recent articulation of the standard, this Court must construe the complaint in favor of Plaintiff, accept the factual allegations contained in the amended complaint as true, and determine whether Plaintiff's factual allegations plausibly suggest viable claims.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Luckey v. Butler County*, No.

---

[2] Defendant Doe was dismissed by the Court on October 15, 2007, therefore any claims regarding the alleged beating will not be considered.

1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (post-Bell Atlantic case stating that Rule 12(c) standard is that the complaint must "'state a claim to relief that is plausible on its face'" (*quoting In re OSB Antitrust Litigation*, No. 06-826, 2007 U.S. Dist. LEXIS 56573, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))).  The claims must be plausible and not merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974.

The purpose of a motion under either rule is to test the sufficiency of the complaint.  A complaint need not set down in detail all the particulars of a plaintiff's claim.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  However, the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

When considering a motion for judgment on the pleadings, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). However, the Court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  *Id.* The Court will, however, indulge all reasonable inferences that might be drawn from the pleading. *See Fitzke v. Shappell*, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

The Court will grant a motion for judgment on the pleadings if there is an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim.  *Little v. UNUM Provident Corp.*, 196 F. Supp. 2d 659, 662 (S.D. Ohio 2002) (*citing Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978)).

-6-

### III.    DISCUSSION

Plaintiff Zeigler asserts claims under federal and state law against Defendants Jeanette Miskiewicz, the Franklin County Ohio Adult Probation Department, S.T.O.P., Inc., Southeast, Inc., and Dorothy Howard.  Only Defendants Dorothy Howard, Southeast, Inc., and S.T.O.P., Inc. have moved for judgment on the pleadings.  Therefore, the claims against them will be addressed in turn below.  Regardless of the outcome of the pending motions, Plaintiff's Complaint will remain pending against Defendants Jeanette Miskiewicz and the Franklin County Adult Probation Department.

**A.    Plaintiff's Federal Claims**

*1.    Due Process*

Plaintiff's First, Second, and Third Claims are for violation of his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and the Ohio Constitution.  It appears that the First Claim is against all Defendants, the Second Claim is solely against S.T.O.P., and the Third Claim is against Defendants Howard and Southeast.

Both the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment were intended to prevent government "from abusing [its] power, or employing it as an instrument of oppression."  *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989).  The Fifth Amendment due process clause, however, does not apply to the states.  *See Capital City Dairy Co. v. Ohio*, 183 U.S. 238 (1901) (the Fifth Amendment only applies to conduct by the Federal Government); *see also Scott v. Clay County, Tennessee*, 205 F.3d 867 (6th Cir. 2000).  Plaintiff has not alleged in his Complaint, nor set forth any argument in his brief to suggest that he is asserting that Defendants Southeast and Dorothy Howard, nor any of the other

Defendants, are federal government actors.  Therefore, Plaintiff's Fifth Amendment claims against all Defendants are hereby dismissed.

With respect to the First, Second and Third Claims for violation of due process under the Fourteenth Amendment against Defendants Southeast, Howard, and S.T.O.P., Defendants assert that they are not state actors.  Defendants simply state that they are private parties and not state government entities and, therefore, entitled to judgment as a matter of law.[3]

In Plaintiff's brief in opposition to Defendants' Motion for Judgment on the Pleadings, he does not contest the individual arguments set forth by Defendants regarding each claim set forth in the Complaint, but rather, generally argues that Defendants are state actors.   Specifically, Plaintiff asserts that "even though Defendants are not directly government employees and/or not a direct government entity, their actions so approximated state action that they are subject to liability under §1983."  (Pl's Memo. in Opp. at 5).

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the deprivation was caused by a person acting under color of law.  *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978); *Memphis, Tenn., Area Local, Am. Postal Workers Union, AFL/CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004).  The second element, which requires that the action be taken "under color of law" has been held to be mean that there must be a state action.  *Watson v. Kenlick Coal*

---

[3] Defendants also argue that Plaintiff has failed to sufficiently plead a 42 U.S.C. § 1983 action by failing to even cite to § 1983 in his Complaint.  Plaintiff, in fact, only cites to § 1983 with respect to jurisdiction in the Complaint.  While Defendants may be technically correct, it appears from Plaintiff's Complaint and from their subsequent pleadings that they are making a due process claim against alleged state actors under 42 U.S.C. § 1983. Thus, given this notice and the liberality of pleading which the Federal Rules of Civil Procedure afford, the Court will consider Plaintiff's due process arguments even though their Complaint fails to cite to the appropriate statute.

*Co., Inc.*, 498 F.2d 1183, 1185 (6th Cir. 1974) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 152 (1970); *United States v. Price*, 383 U.S. 787, 794 (1966)).

A plaintiff cannot assert a claim under § 1983 against a private party based on private conduct "no matter how discriminatory or wrongful" the party's conduct was. *Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003) (*citing Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). In the event that a private party is subject to a claim pursuant to § 1983, the court must determine whether the party's challenged conduct is "fairly attributable to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (*citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

### a.  State actors

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, . . . .

42 U.S.C. § 1983.  To state a claim upon which relief can be granted under § 1983, the plaintiff must show that "(1) the conduct in controversy was committed by a person acting under color of law, and (2) the conduct deprived the plaintiff of a federal right, either constitutional or statutory." *Kottmyer v. Maas*, No. 05-3033, 2006 U.S. App. LEXIS 1075, at *6 (6th Cir. Jan. 18, 2006) (*citing Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982)).  Put differently, "[p]rivate actors can only be held liable under Section 1983 if their 'actions so approximate state action that they may be fairly attributed to the State.'" *Reister v. Riverside Cmty. Sch.*, 257 F. Supp. 2d 968, 971 (S.D. Ohio 2002).

Courts use four tests to determine whether private conduct may be attributed to the state. The first three are grouped together and sometimes referred to as the *Blum* trilogy. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 180 F.3d 758, 762 (6th Cir. 1999) (*citing Blum v. Yaretsky*, 457 U.S. 991 (1982)) (*rev'd*, 531 U.S. 288 (2001)) (reversed as to whether the Academy was a state actor, but not as to the tests themselves); *see also Lansing v. City of Memphis*, 202 F.3d 821 (6th Cir. 2000). The *Blum* trilogy consists of the following tests: (1) the public function test—whether the private entity exercises powers which are traditionally exclusively reserved to the state; (2) the state compulsion test—whether the state has so coerced or encouraged a private entity to act that the choice of that entity must be regarded as the choice of the state; and (3) the symbiotic relationship or nexus test—whether there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself. *Bell v. Mgmt. & Training Corp.*, No. 03-4526, 2005 U.S. App. LEXIS, at *5 (6th Cir. Feb. 4, 2005); *Reister v. Riverside Cmty. Sch.*, 257 F. Supp. 2d 968, 971 (S.D. Ohio 2002).

The United States Supreme Court handed down the fourth test when it decided the *Brentwood* case. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001); *Chapman v. Higbee*, 319 F.3d 825, 834 (6th Cir. 2003). The fourth test is known as the "entwinement" test. *Brentwood*, supra; *Chapman*, supra; *Reister*, 257 F. Supp. at 971-72. The entwinement test considers whether a private entity is "entwined with governmental policies," or whether the "government is 'entwined in [its] management or control.'" *Brentwood*, 531 U.S. at 296 (*citing Evans v. Newton*, 382 U.S. 296, 299, 301 (1966)). In order to make a finding that the challenged conduct is attributable to the state, plaintiff need only show that the party's conduct

and relationship with the state satisfies one of these tests.  *Brentwood*, 531 U.S. 288.

### i.    Public function test

The public function test entails powers that are traditionally exclusively reserved to the state such as holding elections and eminent domain.  *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992) (*citing Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978)); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974)).  Plaintiff does not allege, nor are there any set of facts to establish that the functions of Defendants Southeast, Howard, or S.T.O.P. would qualify as state actors under the public function test.

### ii.    State compulsion test

Coercion or encouragement perpetrated by the state typically takes the form of action undertaken by the state that compels a private entity to act in a particular way.  *See, e.g., Bell v. Maryland*, 378 U.S. 226, 333 (1964) (state licensing and regulation do not convert a private entity into a state actor); *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 ("The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state."); *Cornett v. Mason Volunteer Fire Co.*, No. 95-3010, 1996 U.S. App. LEXIS 14444, at *6 (6th Cir. May 8, 1996).

There is no indication in the Complaint or otherwise that the government encouraged or coerced Defendants Southeast, Howard, or S.T.O.P. to remove Plaintiff from his treatment with Southeast or S.T.O.P.  Therefore, Defendants are not state actors under the state compulsion test.

### iii.    Symbiotic relationship/nexus test

Under the symbiotic relationship/nexus test, the inquiry is whether "there is a sufficiently close nexus between the state and the *challenged action* of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* at *8-9 (citing *Wolotsky*, 960 F.2d at 1335) (emphasis added).  Thus, the inquiry is *not* whether the state and the Defendants generally have a close nexus, but whether there is a close nexus between the state and each of the Defendant's specific action in Plaintiff's removal from the treatment programs.

Plaintiff argues that "Defendant Southeast Inc. by and through Defendant Dorothy Howard, theoretically held the keys to the jailhouse door, every decision that was made by said Defendants could, and in this case did affect Plaintiff's liberty interest, under the terms of his community control."  (Pl's Memo. in Opp. at 7).  However, Defendants argue that Plaintiff did not raise these same assertions in his Complaint.  Nonetheless, the Court will consider Plaintiff's arguments as a whole.

Plaintiff relies on *Laughard v. Frye*, Case No. 3:07-60 (W.D. Pa. Oct. 19, 2007), in support of his position that Defendants are state actors.[4]  In *Laughard*, the *pro-se* plaintiff was to have a psychological evaluation and a sex offender evaluation.  Plaintiff claimed that he was asked to take a polygraph, and if he refused, then the defendants would have him placed back in prison.  The Court found that such a statement by the defendants suggested the possibility that the defendants had some power over the plaintiff which was granted by the state.  Plaintiff cites to relevant portions of the *Laughard* decision:

---

[4] Plaintiff does admit that this case is non-binding authority, and that the case is "not right on all fours with the present case at bar but, arguably the premise would apply."  (Pl's Memo. in Opp. at 6).

> The "power a state exercises over a person whose liberty is restricted as a result of a criminal conviction . . . is quintessentially governmental. . .."; it is, in effect, the exclusive prerogative of the state.  *Robert S.*, 256 F.3d at 167 n. 9.  Moreover, "parole decision" are decidedly state actions.  *Jubilee v. Horn*, 975 F.Supp. 761, 767 (E.D. Pa. 1997) (*citing Brandon v. District of Columbia Bd. of Parole*, 734 F.2d 56, 60 (D.C. Cir. 1984).
>
> * * *
> More generally, the Court finds that since Plaintiff has alleged facts that support an inference that Defendant, had, through operation of the parole agreement, at least the theoretical power to affect the conditions imposed on Plaintiff's liberty, Defendant was operating under color of state law vis-a-vis all her interactions with Plaintiff.

The case at bar differs significantly from the *Laughard* case relied on by Plaintiff. Defendants never threatened Plaintiff that if he did not do something he would be sent to prison. Plaintiff was aware, however, that if he failed to comply with the community control sanctions imposed on him by the Franklin County Court of Common Pleas, he could be sentenced to jail time by the Judge.  Defendant Howard's statement of "get out and don't come back" is not even close to a threat to send Plaintiff to prison like that expressed in *Laughard*.  Further, Plaintiff makes it clear that Defendant Miskiewicz, his probation officer, filed the request for revocation of community control.  However, Defendant Miskiewicz's conduct is not at issue in this motion since she is not moving for judgment on the pleadings at this time.

Though Defendants Southeast, Howard, and S.T.O.P. had control over their treatment programs, combined or individually, they lacked authority to send Plaintiff to prison and ultimately restrict his liberty. Defendants are several steps removed from any authority to place restrictions on Plaintiff's liberty.  Defendants Southeast and S.T.O.P. merely run their programs, and Howard is an employee of Southeast.  It appears from the facts of this case that any problems with a person attending their programs as a result of court imposed community control would be

-13-

reported to the probation officer.  The probation officer then files the request for revocation of community control with the court.  Ultimately, the judge determines whether a violation of community control has occurred, and then the judge will determine if an additional sentence is necessary.

The fact that Defendants did not have any authority to send Plaintiff to prison and were several steps removed from that process, does not necessitate finding a close nexus.  A public entity's actions in compliance with a private entity's recommendations do not convert the private entity into a state actor.  *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 193-96 (1998).  Therefore, Defendants are not state actors under the nexus test.

### iv.    Entwinement test

The entwinement test asks whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Brentwood*, 531 U.S. at 298. The U.S. Supreme Court described what it meant by "entwinement" by referring to the specific facts of *Brentwood*.  In that case, the Court addressed the issue of whether the Tennessee Secondary School Athletic Association (TSSAA), which was "incorporated to regulate interscholastic athletic competition among public and private secondary schools," was a state actor when it enforced its rules against a member school.  *Brentwood*, 531 U.S. at 290.

The Court noted that two types of entwinement existed between the TSSAA and the state: bottom-up entwinement and top-down entwinement.  There was bottom-up entwinement in *Brentwood* because, the Court explained, 84% of the TSSAA consisted of "public schools

-14-

represented by their officials acting in their official capacity to provide an integral element of secondary public schooling." *Id.* at 300. The Court further noted the presence of bottom-up entwinement in the fact that "[t]here would be no recognizable Association, legal or tangible, without the public school officials, who do not merely control but overwhelmingly perform all but the purely ministerial acts by which the Association exists and functions in practical terms." *Id.*

The Court found top-down entwinement in *Brentwood* because "State Board members [were] assigned ex officio to serve as members of the board of control and legislative council, and the Association's ministerial employees [were] treated as state employees to the extent of being eligible for membership in the state retirement system." *Id.*

Viewing the instant case through the *Brentwood* lens, it is evident that there is no entwinement sufficient to support a finding of state action by Defendants. There is no bottom-up entwinement between the state and Defendants as neither would cease to exist if it lacked the involvement of the other. Further, Plaintiff fails to provide any information demonstrating that Defendants and their employees are considered employees of the state. In fact, Plaintiff fails to set forth any argument in support of her contention that Defendants are state actors, other than a bold assertion that Defendants control the keys to the jail house door. This, however, is not proof of entwinement.

There is no bottom-up entwinement between the state and Defendants because there is no basis for concluding that government officials sit on the boards of Southeast or S.T.O.P. or otherwise control it, and because Defendants' ministerial employees are not treated as state employees.

In sum, Plaintiff has not pleaded facts showing the required nexus between Defendants and the Government.  For the above reasons, Court finds that Defendants Southeast, Howard, and S.T.O.P. are not state actors for purposes of a claim under § 1983.  Accordingly, Plaintiff has failed to establish the deprivation of his Fourteenth Amendment Rights as asserted in his First, Second, and Third Claims of his Complaint.[5]  Defendants are entitled to judgment as a matter of law on Plaintiff's § 1983 claims against them.

### 2.    *Civil Conspiracy*

Plaintiff's Fourth Claim of his Complaint alleges a violation of common law conspiracy pursuant to 42 U.S.C. §1988.  Plaintiff, however, incorrectly cites 42 U.S.C. § 1988, rather than 42 U.S.C. § 1983.  The Sixth Circuit has defined civil conspiracy as:

> an agreement between two or more persons to injure another person by an unlawful action.  Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985); *see also Mettetal v. Vanderbilt Univ.*, 147 Fed. Appx. 577, *585 (6th Cir. 2005).  In order to sustain a cause of action for conspiracy under § 1983, Plaintiff must show that there was:  1) a single plan, 2) that the alleged co-conspirator shared in the general conspiratorial objective, and 3) that an overt act was committed in furtherance of the conspiracy that deprived Plaintiff of his civil rights.  *Id.*  Neither an express

---

[5] Plaintiff also appears to generally allege that Defendants imposed undue restrictions upon his liberty by subjecting him to more restrictive sanctions than imposed by the Franklin County Court of Common Pleas.  Plaintiff, however, fails to provide any additional allegations as to what restrictions have been imposed by Defendants.  There are no allegations, other than that Defendants removed Plaintiff from the treatment programs, to suggest Defendants were either state actors or did anything to violate Plaintiff's liberty rights.

agreement is required, nor knowledge of all the details of the plan or its participants.  *Id.* Nevertheless, in order to state a claim for conspiracy under § 1983, Plaintiff must plead to the conspiracy with some specificity, for "vague and conclusory allegations unsupported by material facts will not be sufficient to state [a] claim [for conspiracy] under § 1983."  *Hickey v. Hollister*, 1994 U.S. App. LEXIS 4045 (6th Cir. 1994); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Horton v. Martin*, 137 Fed. Appx. 773 (6th Cir. 2005).

Plaintiff alleges that "Defendants have conspired and agreed to devise, implement, enforce, encourage, sanction, and/or failed to establish, rectify, or enforce policies and practices under which Plaintiff was and will continue to be denied his constitutional rights."  (Compl. ¶ 44). More specifically, Plaintiff states that "Defendants have committed at least one overt act in furtherance of the conspiracy–namely, Defendants have conspired to keep Plaintiff enrolled in a more restrictive sanction, without due process of law; and to require Plaintiff to pay for a program in which Defendants may allege violation and subject him to further sanctions without notice, a full hearing, or a right to further review, all in contravention of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution."  (Compl. ¶ 45).

Defendants argue and this Court agrees that Defendants are not state actors.  Therefore, they are entitled to judgment on the pleadings on Plaintiff's civil conspiracy claim.  A civil conspiracy claim is brought under 42 U.S.C. § 1983, and as set forth above, private actors can only be held liable under Section 1983 if their actions can be attributed to the state.  *See Reister*, 257 F. Supp. 2d at 971.  The Court has determined above that the moving Defendants, Southeast, Howard, and S.T.O.P., are not state actors, and therefore, cannot be held liable under 42 U.S.C. §

1983.  Consequently, the moving Defendants are entitled to judgment on the pleadings on Plaintiff's Fourth Claim of civil conspiracy.

### 3.    *Free Speech*

In Plaintiff's Fifth Claim, he asserts that "Defendants have unreasonably and unjustifiably hindered Plaintiff's ability to engage in free expression.  Defendants removed him from programs without providing him with a reason or justification, thereby placing his life and liberty in jeopardy by violating the rules of the rules of the Defendant Franklin County Adult Probation Department."  (Compl. ¶ 47).

Defendants Southeast and Howard argue that they are private parties and, therefore, entitled to judgment as a matter of law because the First Amendment protections are guaranteed only against violation by the government.  *See Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976) ("the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.") (*citing Columbus Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94 (1973).  "A private actor cannot actionably suppress First Amendment rights nor violate the due process clause."  *Albright v. Longview Police Dept.*, 884 F.2d 835, 841 (5th Cir. 1989).  As previously determined by this Court, the Defendants are not state actors.  Therefore, Defendants Southeast, Howard, and S.T.O.P. are entitled to judgment as a matter of law on Plaintiff's First Amendment claim as set forth in his Fifth Claim of his Complaint.

### 4.    *Involuntary Servitude*

In the Complaint's Sixth Claim, Plaintiff asserts a violation of the involuntary servitude prohibition in violation of the Thirteenth Amendment to the United States Constitution.

Specifically, Plaintiff alleges "Defendants retained Plaintiff in a cycle of payment for services which were rendered without cessation, in violation of the controlling court order, and holding the sole authority to continue charging Plaintiff fees in order to allow him to abide by the conditions of his probation."  (Compl. ¶ 50).  In addition, Plaintiff asserts "Defendants effectively retained and managed physical control of Plaintiff's liberty by conspiring to endlessly keep him in Defendants' various "treatment programs" with no opportunity to "graduate" or terminate successfully out of the program, thereby depriving Plaintiff of his constitutionally-protected right to liberty and the prohibition against involuntary servitude under the Thirteenth Amendment to the United States Constitution."  (Compl. ¶ 51).

No private cause of action exists under the Thirteenth Amendment, only under one of the implementing statutes, i.e., 42 U.S.C. §§ 1981, 1983 or 1985(3).  *See Baker v. McDonald's Corp.*, 686 F. Supp. 1474 (M.D. Fla. 1987), aff'd, 865 F.2d 1272 (1988), cert. denied *Hutchinson v. McDonald's Corp.*, 493 U.S. 812 (1989).  Therefore, for Plaintiff to sufficiently plead a private cause of action for involuntary servitude, he would have to do so under 42 U.S.C. § 1983 or one of the above mentioned statutes.  Not only has Plaintiff failed to correctly plead such claim, but if he did, it would again fail because Defendants are not state actors.  Consequently, Defendants Southeast, Howard, and S.T.O.P. are entitled to judgment as a matter of law on Plaintiff's Sixth Claim.

### 5.      *Cruel and Unusual Punishment*

Plaintiff alleges in his Seventh Claim a violation of prohibition against cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  Specifically, Plaintiff alleges "Defendants continued to place unreasonable and

unjustified restrictions and requirements, without due process, in order to comply with the orders of Franklin County Court of Common Pleas – namely, forcing and coercing Plaintiff to engage in much more than the court-ordered three (3) months of treatment with Defendants, thereby depriving Plaintiff of his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution."  (Compl. ¶ 53).

The Eighth Amendment protects against excessive bail and fines as well as cruel and unusual punishment.  *See* U.S. Const. amend. VIII.  The Amendment "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977).  The Complaint does not contain allegations regarding any of the Defendants' conduct occurring after Plaintiff had been convicted of any crime, nor does it contain allegations implicating the prohibitions against excessive fines or bail. (*See generally* Compl.).  Therefore, Plaintiff has failed to establish the deprivation of his Eighth Amendment Rights.  Defendants Southeast, Howard, and S.T.O.P. are entitled to judgment as a matter of law on Plaintiff's Seventh Claim.

> **6.** ***Violation of the Ninth Amendment***

In Plaintiff's Eighth Claim he asserts a violation of his Ninth Amendment rights. Specifically, Plaintiff states "Defendants' illegal and unconstitutional activities violated not only Plaintiff's enumerated rights under the United States Constitution, but many other rights not enumerated in the United States Constitution, yet protected by the Ninth Amendment to the United States Constitution.  Defendants' actions constitute myriad deprivations of Plaintiff's liberty and property that are not specifically enumerated, yet certainly protected by the Ninth Amendment." (Compl. ¶ 55).

The Ninth Amendment specifically provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  The Sixth Circuit has held that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law."  *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991).  Rather, it "was added to the Bill of Rights to ensure that the maxim *expressio unius est exclusio alterius*[6] would not be used at a later time to deny fundamental rights merely because they were not specifically enumerated in the Constitution."  *Id.*  Accordingly, Plaintiff's Ninth Amendment claim does not have any merit and shall therefore be dismissed.

**B.      Plaintiff's State Law Claims**

As set forth above, Plaintiff's Memorandum in Opposition fails to contest Defendants' arguments with respect to Plaintiff's state law claims.  Regardless, the Court finds that Plaintiff's state law claims against the moving Defendants, like his federal claims, fail.

It is well settled that a District Court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).  Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state claims generally should be dismissed.  *Id.*; *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992).  Therefore, pursuant to 28 U.S.C. §1367(c)(3) and (d), the Court will

---

[6] This canon of construction holds "that to express or include one thing implies the exclusion of the other, or of the alternative."  Black's Law Dictionary 602 (7th ed. 1999).

dismiss Plaintiff's state law claims against Defendants Southeast, Howard, and S.T.O.P. without prejudice.

## IV.    DISPOSITION

For all of the foregoing reasons, the Court **GRANTS** Defendant Southeast, Inc. and Dorothy Howard's Motion for Judgment on the Pleadings (Doc. 16) and **GRANTS** Defendant S.T.O.P. Inc.'s Motion to Dismiss and/or for Judgment on the Pleadings (Doc. 17).  This case remains pending as to Defendants Jeanette Miskiewicz and the Franklin County Adult Probation Department.  Specifically, the First, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Claims remain pending as to these Defendants.

The Clerk shall remove Documents 16 and 17 from the Court's pending motions list.

**IT IS SO ORDERED.**

_    /s/ George C. Smith_
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**